```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEPHEN O'NEILL,                       :
          Plaintiff,                   :
               v.                      :   Civil Action No. 05-144J
RICHARD S. GEHL, M.D., JOAN            :
DELIE, R.N., and SAMUEL                :
WATERSON, M.D.,                        :
          Defendants                   :
```

## MEMORANDUM ORDER

Plaintiff is incarcerated and has filed a complaint alleging that he has been injured by inadequate medical care provided to him by defendants. Plaintiff makes two distinct claims: 1) a federal claim under 42 U.S.C.§ 1983 that his civil rights under the Eighth Amendment were violated by defendants and 2) a state law claim that defendants committed medical malpractice. Upon review of the motions to dismiss, and screening the complaint pursuant to 28 U.S.C.§ 1915A, I dismiss the federal civil rights portion of the complaint for failure to state a claim. Whether plaintiff has a claim for medical malpractice under Pennsylvania state law is better determined in the state courts. Because there are no viable federal claims and this matter is at the preliminary stages, there is no reason for this court to exercise pendent and supplementary jurisdiction under 28 U.S.C.§ 1367, and supplemental jurisdiction is declined under Section 1367(c). To comply with the transfer provisions of 42 Pa.C.S.§ 5103(b), plaintiff should be given a reasonable time to file a complaint in the appropriate Court of Common Pleas. Because plaintiff alleges that he will be released from incarceration by the end of this year, and may need

time to obtain counsel to prosecute a medical malpractice action, the time in which plaintiff must file any complaint in state court is extended to March 31, 2006.

I.

Under Fed.R.Civ.P. 12(b)(6), the court must accept as true the facts alleged in the complaint and construe them in a light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Dismissal is only appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). At the same time, the court cannot supply missing allegations of fact, accept legal conclusions as allegations of fact, or draw unsupportable inferences from the allegations of fact. See Morse v. Lower Merion School District, 132 F.3d 902, 905 (3d Cir.1997).

As a sentenced prisoner, plaintiff advances his federal claim under the Supreme Court's interpretation of the Eighth Amendment in Estelle v. Gamble, 429 U.S. 97, 106 (1976):

> In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

The Supreme Court has defined the "deliberate indifference" element of an Estelle v. Gamble claim to require willful disregard:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994). Contrary to defendant Gehl's first affirmative defense, a medical care provider can be a "prison official" for purposes of liability, see West v. Atkins, 487 U.S. 42 (1988). Normally, however, a prison official who is not a physician is not a medical care provider. As the Court of Appeals for the Third Circuit has explained,

> [A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir.2004). See also Farmer, supra, 511 U.S. at 844:

> [I]t remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so. Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent. In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.

## II.

Plaintiff's complaint alleges that he suffered an injury to his right ankle in 1987 that caused him discomfort, and that after he complained of pain while incarcerated in 2002, defendant Richard

Gehl, an orthopedic surgeon, examined him as a consulting specialist hired by the Pennsylvania Department of Corrections. Gehl suggested that an ankle fusion would be the best treatment option, plaintiff agreed, and surgery was approved by the Pennsylvania Department of Corrections. In January 2003, plaintiff underwent ankle fusion surgery (open reduction internal fixation) at Mercy Providence Hospital, performed by defendant Gehl and a Dr. Moyer. This involved closing the incision with staples. On or about January 18, 2003, Gehl discharged plaintiff with a temporary cast on his ankle, scheduled to be removed (apparently with the staples) after two weeks. On January 27, 2003, plaintiff complained to Joseph Geragi, a physician assistant at S.C.I. Pittsburgh, that he was in severe pain. The prison physician, Edward Swierczewski, increased plaintiff's dosage of Vicodin in response.

On January 31, 2003, Gehl briefly examined plaintiff in the RHU at S.C.I. Pittsburgh but did not remove plaintiff's cast. Gehl does not allege he made any complaints to Gehl. On February 7, 2003, Marsha Hancock, a nurse at S.C.I. Pittsburgh, told plaintiff that most likely Gehl would not be in to remove plaintiff's cast until the following week. On February 7, 2003, plaintiff complained to Geragi that he was in pain again. On February 10, 2003, Geragi told plaintiff that Swierczewski had sent

4

him to remove plaintiff's staples, but Geragi could not remove the staples because the cast was still in place.

Plaintiff saw Geragi again on February 14, 2003, when Geragi came to the RHU. Geragi stated that defendant Joan Delie, a nurse who is the prison's health care administrator, Swierczewski, and defendant Samuel Watterson, another physician and the assistant medical director at S.C.I. Pittsburgh, had denied Geragi permission to remove plaintiff's cast or staples, since it was prison policy not to interfere with the aftercare instructions of the specialist, in this case Gehl.

On February 18, 2003, plaintiff felt severe pain and complained to Geragi that he also had "flu like symptoms and drainage in the stapled area." Plaintiff's Vicodin prescription had also expired and he was without Vicodin for a part of the day during which time he was in severe pain. He complained about the pain to Hancock when she saw him in the RHU that morning; she told him she would handle the renewal of his Vicodin prescription; plaintiff received Vicodin again after 2:00 p.m. At that time, plaintiff was in such pain that the corrections officers on duty had plaintiff sent to the medical unit.

Delie examined plaintiff by placing her hands on his leg around the cast and stated that if there were an infection the cast would be hot. Delie told plaintiff that Watterson had said that Gehl would be there in 10 days to remove the cast and staples.

5

On February 27, 2003, plaintiff was taken to Mercy Providence Hospital, where Gehl instructed a resident to remove plaintiff's cast. When the cast was removed, it was discovered that the incision site was infected. Plaintiff was admitted to the hospital from February 27, 2003, until March 12, 2003, and had to undergo surgical debridement of the infected wound area, followed by a skin graft performed on April 25, 2003.

In May, 2003, plaintiff again was transported to Mercy Providence Hospital because of pain in his right calf, which was diagnosed as a blood clot and treated with blood thinners.

### III.

As can be seen from the quotations from Farmer above, while simple failure by a doctor or prison official to treat an injury properly may be negligent under state law, a constitutional claim of deliberate indifference requires the defendants to "know of" and "disregard" an excessive risk to the inmate's health. There is no allegation whatsoever that defendant Gehl knew anything about what was going on at the prison. His alleged failure to remove plaintiff's cast on schedule, even if it constituted a failure to care for plaintiff properly, does not permit an inference that Gehl knew that plaintiff had an infected incision or even was at an excessive risk of developing an infection, much less that he disregarded such knowledge. No claim is stated against Gehl.

Even fewer allegations in support of a claim are stated against defendant Watterson. He allegedly took no active role in plaintiff's care except to state that the Pennsylvania Department of Corrections' policy was not to interfere with the post surgical care when surgery had been performed by an outside specialist. He too is not alleged to have any knowledge that plaintiff had an infection or was at excessive risk for infection, much less that he disregarded that knowledge.

Defendant Delie is alleged to have actually seen plaintiff and to have concluded that plaintiff did not have an infection. As the plaintiff's own exhibits to the complaint show, plaintiff, when he complained of being in pain on February 18, 2003, was taken to the medical unit by corrections officers. Plaintiff complained of pain and drainage from his cast. Examination by Geragi showed that plaintiff's toes were warm and he could wiggle them, plaintiff's capillary filing was within normal limits, and that no drainage was noted. Geragi noted that he would check for the date of plaintiff's next consultation with Gehl and would renew plaintiff's medications. Geragi's notes further indicate he did call Gehl's office and was instructed to leave the cast alone. Delie saw plaintiff on February 18, 2003, and noted that she had spoken to Watterson and been instructed that Gehl would remove the cast in about 10 days. Delie also noted that plaintiff complained that his weight had gone from 232 pounds to

190 pounds, and that she had made Geragi aware of this complaint. Delie's notes also record that she saw no evidence of drainage, that plaintiff's toes were warm and he was neurovascular[ly] intact with no evidence of redness around his toes or warmth around the cast, and that plaintiff had good capillary refill.

In short, there is no allegation that Delie was aware of plaintiff's infection and disregarded it. To the contrary, plaintiff's case against Delie relies on the implied allegation that Delie missed the warning signs of infection or failed to investigate more aggressively whether plaintiff's complaint of pain on February 18, 2003, was being caused by infection. This may constitute negligence, but drawing the wrong conclusion from observations is **not** deliberate indifference.

To accept plaintiff's allegations of fact concerning the plaintiff's injury and its severity does not permit the court ignore the absence of allegations of fact stating a federal claim about how that injury was caused. Even a minor injury caused by intentional conduct or deliberate indifference is a violation of the Eighth Amendment; even a catastrophic loss, in the absence of deliberate indifference, is not.

Occasionally, the allegations of causation are implied in the complaint: the corrections officer who allegedly delays in calling for medical care in an obvious emergency situation because of malice can be inferred to intend or be deliberately indifferent

to the prospect of injury to an inmate caused by lack of treatment; likewise, the doctor (mentioned in <u>Estelle v. Gamble</u>) who injects a prisoner with penicillin despite knowledge that he was allergic to it, can be inferred to have intended the harm caused.  Sometimes the inference of indifference can be drawn from the allegation that defendants used an inappropriate method to treat a medical problem obviously to save money: the prison doctor (mentioned in <u>Estelle v. Gamble</u>) who chooses the "easier and less efficacious treatment" of throwing away a prisoner's ear and stitching the stump rather than treating the prisoner after an altercation can be inferred to be deliberately indifferent to the consequences to plaintiff of his choice; the prison doctor (mentioned in <u>Estelle v. Gamble</u>) who cancels prescribed pain medication after an inmate's leg surgery despite the contrary instructions of the operating surgeon, can be inferred to be deliberately indifferent to the consequences to the inmate of the choice to save money.

But here, the necessary allegations of causation are not just absent, they are negated by the allegations of plaintiff's complaint.  Plaintiff alleges that a longstanding chronic injury was treated, after he complained about it, by a specialist provided by Pennsylvania Department of Corrections.  While plaintiff was recovering from surgery provided by the Pennsylvania Department of Corrections, plaintiff contracted an infection.  Plaintiff does not allege that defendants caused the infection or even knew about it,

or that it was caused by prison personnel disregarding the specialist's instructions. Plaintiff's allegations are 1) that Delie erroneously concluded that plaintiff did **not** have an infection; and 2) that Watterson and Delie concluded that following Gehl's orders and waiting for Gehl to remove plaintiff's cast was the correct course of action. Plaintiff does not allege that Gehl had any knowledge of any infection. (Defendants assert the infection was due to plaintiff's deliberate dunking of his cast in his toilet, but that raises questions of fact not capable of resolution at this stage of the proceedings. However, it is noteworthy that after the infection was discovered, plaintiff alleges, the Pennsylvania Department of Corrections provided prompt remedial treatment. Even assuming that defendants did not care about plaintiff's personal welfare in the slightest (that is, they were indifferent in the psychological sense), why they would in the first instance be indifferent (in the legal sense) to the prospect of serious injury to plaintiff, only to cause themselves additional work and expense to cure plaintiff, is unfathomable.)

Plaintiff can reasonably ask for the inference that Delie and Watterson had a duty to override Gehl's instructions, due to plaintiff's complaints of pain, or that Delie misread the signs of infection. Those are malpractice claims, and plaintiff can bring them in state court.

IV.

No reasonable person could infer from the allegations of plaintiff's complaint, or from any subsequent allegation made in plaintiff's briefs or exhibits, that any defendant was deliberately indifferent to the risk of infection to plaintiff. Judgment is entered for the defendants on the federal claims. The state law claims are dismissed without prejudice to proceeding in state court, as discussed in Section I above. The Clerk shall mark this matter closed and terminate all pending motions. Plaintiff's motion for appointment of counsel is denied because his federal claim lacks merit.

DATE: 3 November 2005

Keith A. Pesto,
United States Magistrate Judge

cc:
Stephen O'Neill EN-4337
S.C.I. Cresson
P.O. Box A
Cresson, PA 16699-0001

Rodney M. Torbic, Esquire
6th Floor Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219

Samuel Foreman, Esquire
Two Gateway Center, Suite 1450
Pittsburgh, PA 15222

Patricia L. Dodge, Esquire
11 Stanwix Street, 18th Floor
Pittsburgh, PA 15222